UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM T. DUNGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:17-cv-02485-MJD- SEB |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

William T. Dungan ("Dungan") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For the reasons stated below, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the decision of the Commissioner.

**I.   Background**

On July 16, 2013, Dungan filed an application for DIB, alleging disability beginning July 16, 2013. [Dkt. 11-2 at 35.] Dungan alleges disability due to diabetes, peripheral neuropathy, diabetic ulcers on his feet, anxiety, depression, cataracts, chronic obstructive pulmonary disease, hyperlipidemia, hypertension, and cellulitis. [Dkt. 14 at 3.][1] Dungan's claim was initially denied

---

[1] Dungan's and the Commissioner's briefs articulated the relevant factual and medical background in more detail [*See* Dkt. 14 and Dkt. 16.] However, these facts include confidential and otherwise sensitive medical information so the Court will incorporate facts from these materials only as needed below.

1

on October 31, 2013, and denied again on January 30, 2014, upon reconsideration. [Dkt. 11-2 at 36.]

On March 19, 2014, Dungan filed a timely written request for a hearing, which was held on August 12, 2015 before Administrative Law Judge Paul Greenberg ("ALJ"). *Id.* at 33–34. The ALJ's decision, issued June 15, 2016, denied Dungan's application for DIB. *Id.* at 31–43. On May 25, 2017, the Appeals Council denied Dungan's request for review, making the ALJ's decision the final decision of the Commissioner. *Id.* at 1–3. Dungan made a timely filing of his Complaint with this Court on July 24, 2017, and his Complaint is now before the Court. [Dkt. 1.]

**II. Legal Standard**

A claimant found to be disabled, pursuant to 42 U.S.C. § 423, is eligible for DIB. Here, disability is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental impairments are so severe that "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other . . . substantial gainful work . . . in the national economy." 42 U.S.C. § 423(d)(2)(A).

To evaluate whether a claimant is disabled, the Commissioner employs a five-step, sequential analysis: (1) the claimant is not disabled if he is engaged in substantial gainful activity; (2) the claimant is not disabled if he lacks a "severe" impairment; (3) the claimant is disabled if his impairment or combination of impairments meets or medically equals any impairment in the Listing of Impairments ("Listings"), found at 20 C.F.R. pt. 404, subpart P, App. 1; (4) the claimant is not disabled if he is (a) not found to be disabled at step three, and (b)

able to perform his past relevant work; and (5) the claimant is not disabled if he is (a) not found to be disabled at step three, and (b) can perform other work available in the national economy. 20 C.F.R. § 404.1520.

The burden is on the claimant for the first four steps, but shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). In order to evaluate the claimant's functional limitations and capacity for work-related activities, the ALJ assesses the claimant's residual functional capacity ("RFC") before proceeding to steps four and five. S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. Jul. 2, 1996). The ALJ's findings become the Commissioner's findings when the Appeals Council denies review of the ALJ's findings. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

The Social Security Act provides for judicial review of a Commissioner's denial of benefits. 42 U.S.C. § 405(g). However, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* although the ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)).

This Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000)). However, the "ALJ's decision must be based upon consideration of all the

relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). All evidence need not be mentioned in the ALJ's decision, but the ALJ must "provide some glimpse into her reasoning," and "build an 'accurate and logical bridge' from the evidence to her conclusion" in order to be affirmed. *Dixon*, 270 F.3d at 1176 (quoting *Zurawski v. Halter*, 245 F.3d 881, 887–89 (7th Cir. 2001)).

### III.  The ALJ's Decision

The ALJ determined that Dungan was last insured, as required for DIB, on March 31, 2014, and that Dungan's alleged disability onset date was May 30, 2013. [Dkt. 11-2 at 35, 63.] At step one, the ALJ found that Dungan did not engage in substantial gainful activity during the time between his alleged onset date and date last insured. *Id.* at 36. At step two, the ALJ concluded that Dungan suffered from two severe impairments, diabetes and diabetic neuropathy, but all other alleged impairments were nonsevere. *Id.* To determine whether Dungan's mental impairments were severe, the ALJ considered the four broad functional areas set out in the Listing of Impairments ("paragraph B criteria"): (1) daily living activities; (2) social functioning; (3) concentration, persistence, or pace; and (4) periods of decompensation. 20 C.F.R. pt. 404, subpart P, App. 1; [Dkt. 11-2 at 39.] The ALJ concluded that Dungan's mental impairments were nonsevere because he had only mild limitations in the first three functional areas and had experienced no extended periods of decompensation. [Dkt. 11-2 at 39.]

At step three, the ALJ concluded that Dungan did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. [Dkt. 11-2 at 40;] 20 C.F.R. pt. 404, subpart P, App. 1; *see also* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. The ALJ's decision only makes mention of an assessment under § 9.00 (Endocrine

4

Disorder). [Dkt. 11-2 at 40.] At step four, the ALJ found that Dungan had the RFC to perform sedentary work except:

> [Dungan] occasionally can climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Dungan] cannot climb ladders, ropes, and scaffolds. He occasionally can reach overhead with his upper extremities (bilateral). He must be able to stand for 5 minutes after sitting for 25 minutes, or sit for 5 minutes after standing for 25 minutes, but he can continue working in either position. [Dkt. 11-2 at 40.]

In determining these limitations, the ALJ "considered all [of Dungan's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* The ALJ noted that he gave substantial weight to the agency medical consultants' assessments of Dungan's diabetes and neuropathy problems, and reduced the RFC to the sedentary exertion level because of Dungan's diabetic-related foot ulcerations. *Id.* at 41. In light of the ALJ's RFC determination, the ALJ concluded at step four that Dungan was able to perform his past relevant work as a call center representative, based on testimony by a vocational expert ("VE"). *Id.* at 42.

Additionally, the ALJ made a step five determination, based on the VE's testimony that there were other jobs in the national economy that someone with Dungan's education, work experience, age, and RFC would be able to perform. *Id.* Although Dungan's ability to perform all or substantially all sedentary work may be impeded by his unique limitations, the VE testified that someone with Dungan's age, education, RFC, and work experience would be capable of the following occupations: bench hand, food order clerk, and addressee. [Dkt. 11-2 at 43–44.] The ALJ concluded that Dungan was not disabled because these jobs were available in significant numbers in the national economy. *Id.* at 44.

5

## IV. Discussion

Dungan asserts that the ALJ made four errors that require remand: (1) the ALJ failed to properly consider the evidence and utilize readily available medical witnesses for listing analysis under Listings 8.04 and 11.14; (2) the ALJ erroneously found Dungan capable of sedentary work; (3) the ALJ should have determined whether Dungan was presently disabled at the time of the trial before determining whether the onset date of his disability was prior to his date last insured, and considered evidence accordingly; and (4) the ALJ mistakenly overlooked several factors in his evaluation of Dungan's subjective symptoms.

### A. Listing 8.04 (Chronic Skin Infections) and Listing 11.14 (Peripheral Neuropathy)

Dungan argues that the ALJ failed to adequately explain why Dungan's impairments do not meet or equal Listings 8.04 or 11.14, which involve other body systems. [Dkt. 14 at 17-22.] If the ALJ had determined that Dungan had an impairment that "[met] or medically equaled the criteria of any listing in other body systems" in addition to his diabetes, then Dungan's combination of impairments would likely have medically equaled Listing 9.00. 20 C.F.R. pt. 404, subpart P, App. 1. *See Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (noting that a finding of equivalence allows a "presumption of disability that makes further inquiry unnecessary")). Further, Dungan argues that the ALJ erred in not seeking a medical expert's opinion on the medical equivalency of Dungan's impairments, and in doing so impermissibly "played doctor." [Dkt. 14 at 17–21.]

The ALJ need not "articulate specific evidence supporting his . . . finding that an individual's impairment(s) does not medically equal a listed impairment," but should consider all medical evidence in the record. SSR 17–2p (replacing SSR 96–6p, as of March 27, 2017, after the ALJ's decision was issued). When the medical evidence in the record is sufficient to make a

6

decision, the ALJ may rely on it alone, without consulting a medical examiner. *Simila v. Astrue,* 573 F.3d 503, 516 (7th Cir. 2009). Nevertheless, the ALJ may not reject a doctor's medical conclusion without contrary evidence, or make medical conclusions about a claimant without relying on medical evidence. *Back v. Barnhart*, No. 02-3486, 2003 WL 1878956, at *5 (7th Cir. Apr. 11, 2003).

The Commissioner argues that Dungan failed to meet his evidenciary burden regarding whether his impairments met or equaled a listing. [Dkt. 16 at 9.] Dungan first argues that the ALJ's decision failed to address whether Dungan meets Listing 8.04 based on the leg and feet elevation questionnaire ["Questionnaire"] in the record, though the Questionnaire was discussed at Dungan's hearing. [Dkt. 14 at 13; Dkt. 11-13 at 29; Dkt. 11-2 at 95.] In the Questionnaire, treating physician Dr. Drummond indicated that Dungan had to elevate his feet as often as possible and minimize walking from June to October 2013, and February to August 2014. *Id*; *see also Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir 2016) (indicating that a treating physician's opinion is usually entitled to controlling weight) (citing *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)). Dungan asserts that the Questionnaire strongly suggests that he could meet Listing 8.04, which requires a claimant to have "chronic infections of the skin . . . or extensive ulcerating skin lesions . . . that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. pt. 404, subpart P, App. 1.

In response, the Commissioner contends that the ALJ's failure to acknowledge this Questionnaire in his decision was "at most harmless." [Dkt. 16 at 13.] The Commissioner's argument overlooks the fact that the ALJ failed to discuss Listing 8.04 and the Questionnaire altogether in his decision. [Dkt. 11-2 at 40.] Even if Dungan's impairments did not equal Listing 8.04, the ALJ erred in deeming Dungan's peripheral neuropathy a severe impairment at step two

7

of his analysis, and then failing to consider whether Dungan's neuropathy met Listing 11.14. [Dkt. 11-2 at 38.]

Additionally, Dungan asserts that the ALJ erred in failing to consider evidence of his need for a cane and walker as part of the ALJ's listing analysis. [Dkt. 14 at 19.] In 2013, Dungan was given a walker to use at the hospital after the diabetic ulcers on his feet were removed, and claims to have been prescribed a cane at the time too, but lost the prescription. [Dkt. 11-2 at 67–69; Dkt. 11-9 at 14.] Thus, the record shows that Dungan's only prescriptions for walking aids came in 2015, after March 31, 2014, the date last insured, and did not apply retroactively. [Dkt. 11-13 at 30-31; Dkt. 11-18 at 100.] Thus, the ALJ did not err in failing to reference this evidence in his listing analysis.

Dungan also argues that the ALJ erred in failing to summon a medical advisor to testify and utilize the medical record in evaluating whether Dungan's impairments equaled a listing. [Dkt. 14 at 21.] The ALJ is not required to solicit medical testimony if a medical expert has signed a disability determination form that addresses whether the alleged impairment equals a listing. *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989); *see also Barnett v. Barnhart, 381 F.3d 664, 669 (7th Cir. 2004).* Here, consultative examiners found that Dungan suffered from neuropathy and diabetic foot ulcers, and considered Listing 11.14. [Dkt. 11-3 at 8, 21.] However, the examiners provided no comment on whether Listing 11.14 was met or equaled, and did not consider Listing 8.04. *Id; see also Wadsworth v. Astrue*, No. 1:07-cv-0832-DFH-TAB, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008). On remand, the ALJ should provide further explanation, based on medical evidence, on whether Dungan equals or meets Listings 8.04 and/or 11.14.

The ALJ's incomplete listing analysis is impermissible, as "in considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Even a 'sketchy opinion' is sufficient if it evidences that an ALJ considered the important evidence and allows the Court to trace the ALJ's reasoning, but the ALJ's decision here falls short of this standard. *Brindisi ex re. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). Due to the insufficiency of the ALJ's listing analysis, this Court should remand the ALJ's decision for further consideration of whether Dungan's impairments meet or equal a listing.

### B. Residual Functional Capacity

Dungan argues that the ALJ erred by failing to accommodate Dungan's walking and mental health limitations in the RFC and the hypothetical questions posed to the VE. Dungan notes that the ALJ determined that Dungan was capable of sedentary work, of which walking is a functional component. 20 C.F.R. § 416.967(a) ("Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."); [Dkt. 14 at 23.] Except in narrow circumstances, the hypothetical questions and RFC must account for all of a claimant's limitations supported by medical evidence in the record. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 615–621 (7th Cir. 2010); *see also Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009); *Similia v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009) (ruling that an ALJ was not required to give any particular weight to a doctor who did not have an ongoing treatment relationship with the claimant).

Dungan's argument that the RFC was erroneous because it failed to accommodate Dungan's depression and anxiety is not sufficiently supported by the record. [Dkt. 14 at 26–27.]

9

Dr. Dale, a consultative psychologist, concluded that Dungan's mental impairments caused no more than "minimal occupational difficulty" and the only evidence that Dungan cites in support of his alleged mental impairments is his own testimony that his anxiety forced him to leave a previous job. [Dkt. 11-12 at 51; Dkt. 14 at 26.]

Dungan's argument that the RFC was erroneous because it fails to accommodate Dungan's walking limitation also fails. As evidence, Dungan again pointed to the Questionnaire, in which Dr. Drummond put limitations on Dungan's ability to walk for a five- and seven-month period. [Dkt. 11-13 at 29; Dkt. 14 at 25.] Though Dr. Drummond seems to have treated Dungan several times, the Questionnaire carries little weight here because an RFC should reflect a physical or mental impairment that lasts "for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); *see also Washington v. Colvin*, No. 1:15-cv-00189-SLC, 2016 WL 4884156, at *7 (N.D. Ind. Sept. 14, 2016) ("[Claimant] saw Dr. Meyers for about four months, and the limits he assigned . . . do not accurately reflect the claimant's residual functional capacity 12 months in duration.").

Dungan also briefly raises the argument that the ALJ erred in categorizing Dungan's past relevant job based on the VE's testimony. [Dkt. 14 at 28.] However, as the Commissioner points out, Dungan was represented by counsel at the hearing, where Dungan's attorney asked no questions and made no objections to the VE's testimony. [Dkt. 16 at 19; *see also* Dkt. 11-2 at 107.] Without more, "a claimant represented by counsel is presumed to have made his best case before the ALJ." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (quoting *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007)). Thus, because Dungan did not object to the VE's testimony at the hearing, the ALJ reasonably relied on the VE's testimony. Further, even if the VE erred in categorizing Dungan's past jobs at step four, the ALJ also proceeded to step five and found that

there was a significant number of jobs in the national economy that Dungan could perform. [Dkt. 11-2 at 43.]

### C. Social Security Ruling (SSR) 83-20

Dungan argues that the ALJ violated SSR 83-20, which requires that "in addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability." SSR 83-20. However, if an ALJ does "not hold based on the medical evidence that Plaintiff was disabled," then there is no need to apply SSR 83-20. *Patterson v. Colvin*, No. 1:13-cv-00553-SEB-TAB, 2014 WL 2511625, at *2 (S.D. Ind. June 3, 2014); *see also Ross v. Colvin, No. 3:13-cv-1968-JVB-CAN, 2016 WL 1266865, at *2–3 (N.D. Ind. Mar. 31, 2016).* Just as in *Patterson*, the ALJ here found that the Dungan "has . . . residual functional capacity to perform a wide range of sedentary work," and is not disabled. 2014 WL 2511625, at *2. Therefore, the ALJ could reasonably rely on the onset date provided by Dungan's testimony at the hearing because SSR 83-20 does not apply. [Dkt. 11-2 at 37.] However, if on remand "the ALJ determines the applicant was disabled prior to his last insured date, and if the disability was one of nontraumatic or progressive origin, then pursuant to SSR 83-20 the ALJ must engage [sic] a medical advisor to determine the precise onset date." *Gutka v. Apfel,* 54 F. Supp.2d 783, 787 (N.D. Ill. 1999); *see also Payne v. Colvin*, No. 3:12–cv–00675–PPS, 2014 WL 1031017 (N.D. Ind. Mar. 13, 2014).

### D. Social Security Ruling 16-3p

Dungan contends that the ALJ did not provide a sufficient explanation in step two of his SSR 16-3p analysis for his finding that Dungan's subjective symptom statements are not reliable. [Dkt. 14 at 30.] The regulations mandate a two-step evaluation when a claimant alleges impairment-related symptoms: (1) an ALJ must consider "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's

symptoms; and (2) an ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p.

SSR 16-3p became effective on March 28, 2016, replacing SSR 96-7p and requiring an ALJ to assess a claimant's subjective symptoms rather than his credibility. *Id.* The "change in wording is meant to clarify that [ALJ's] aren't in the business of impeaching claimants' character; obviously [ALJ's] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original); *see also Hall v. Colvin*, 778, F.3d 688, 691 (7th Cir. 2015) (noting that an ALJ erred in her "belief that complaints of pain, to be credible, must be confirmed by diagnostic tests."). At stage two of his SSR 16-3p analysis, the ALJ considers the claimant's alleged symptoms in light of the frequency and intensity of pain, aggravating factors, the effectiveness of treatment, and the claimant's daily activities. *Wadsworth v. Astrue*, No. 1:07-cv-0832-DFH-TAB, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008).

The Court must give the "ALJ's credibility finding 'special deference' and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008)). In fact, "credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (quoting *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)).

The ALJ gave substantial weight to the state agency's medical consultants but found that their assessments did not support Dungan's disability claim. [Dkt. 11-2 at 42.] Therefore,

Dungan's claim of disability rested heavily on his allegations of symptoms. *See Curvin*, 778 F.3d at 651. The ALJ found that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence." [Dkt. 11-2 at 41.] In his decision, the ALJ identified several inconsistencies between Dungan's alleged symptoms and the medical evidence in the record. *Id. see also Lloyd v. Berryhill*, 682 F. App'x 491, 496 (7th Cir. 2017). For instance, a treating physician confirmed Dungan's diabetes and neuropathy diagnoses, but did not observe any physical limitations, which conflicted with Dungan's testimony regarding the intensity, persistence and limiting effects of his symptoms. [Dkt. 11-2 at 41; Dkt. 11-12 at 50–63.]

Next, Dungan argues that the ALJ equates Dungan's ability to complete daily activities with his ability to engage in full-time work. [Dkt. 14 at 33.] However, in his decision, the ALJ accurately reported that Dungan can perform light household tasks, with some difficulty. [Dkt. 11-2 at 38.] Further, the ALJ does not appear to put undue weight on Dungan's activities of daily living, as this is not his only grounds for concluding that Dungan's symptoms call for accommodations in his RFC but not a finding of disability. *See Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013).

Dungan's final argument is that the ALJ improperly considered pain complaints that could reasonably be expected from his degenerative disc disease and peripheral neuropathy. [Dkt. 14 at 34–35.] However, the ALJ did not find degenerative disc disease to be a severe or nonsevere impairment. [Dkt. 11-2 at 37–38.] Additionally, the ALJ indicated that medication was improving Dungan's symptoms, and a treating physician observed that Dungan's symptoms were not worsening over time. [Dkt. 11-2 at 41–42.] Because the ALJ's evaluation was reasoned

and supported, the Court does not find error with the ALJ's evaluation of Dungan's subjective symptoms under SSR 16-3p. *See Tunnell v. Berryhill*, No. 1:17-cv-2275-WTL-MJD, slip op. at 2–4 (S.D. Ind. May 31, 2018) ("Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision 'lacks any explanation or support . . . will [the Court] declare it to be patently wrong.'") (quoting *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008)).

## V. Conclusion

The standard for disability claims under the Social Security Act is stringent. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Further, the standard of review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Where, as here, the ALJ fails to build a logical bridge between evidence in the record and the ALJ's conclusion, the Court must remand. For the reasons set forth above, the undersigned recommends the Commissioner's decision be vacated and **REMANDED** for further proceedings.

## Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to

review by the court of appeals of any portion of the recommendation to which an objection was not filed.  *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Davis v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Dated:  19 JUN 2018

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov